Daniel E. Thenell, OSB No. 971655
Email: dan@thenelllawgroup.com
Emerson Lenon, OSB No. 123728
Email: emerson@thenelllawgroup.com
Thenell Law Group, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone: (503) 372-6450
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MATHIEU LACROSSE, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>PAIGE CLARKSON, in her official and individual capacities as District Attorney of Marion County, MARION COUNTY DISTRICT ATTORNEY'S OFFICE,<br><br>              Defendants. | Case No. 6:18-cv-1181-JR<br><br>**PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS**<br><br>Oral Argument Requested |

### OBJECTIONS

Plaintiff, Mathieu LaCrosse ("Plaintiff"), by and through his attorneys, Thenell Law Group, P.C., hereby submits the following objections to the findings and recommendations of Magistrate Judge Kasubhai made on March 22, 2019.

/ / /

/ / /

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 1     2017-103

## I.    BACKGROUND

Mathieu LaCrosse ("LaCrosse") brought suit under 42 USC § 1983 against the then District Attorney for Marion County, Walter Beglau ("Beglau"), in his official and individual capacities, as well as the Marion County District Attorney's Office ("MCDA"). Comp., ECF No. 1. This complaint was originally filed on July 3, 2018. *Id.* Deputy District Attorney Paige Clarkson ran for District Attorney in the 2018 election and was set to take office in January 2019. Beglau announced in September 2018 that he was stepping down early and Governor Kate Brown appointed Clarkson to take over as District Attorney on Oct 1, 2018. Due to the change in the identity of the District Attorney, LaCrosse sought leave from the court to amend his complaint. On October 29, 2018 LaCrosse filed an Amended Complaint and on December 14, 2018 LaCrosse filed a Second Amended Complaint. Sec. Am. Compl., ECF No. 26.

The Court has noted that the caption of LaCrosse's Sec. Am. Compl. Identifies Clarkson in both her official and individual capacities, while the body of LaCrosse's Second Amended Complaint only identifies her in her official capacity. Find. And Rec. Fn 1, ECF No. 32. The failure to include the words "and individual" in paragraph 7 of the Second Amended Complaint was a scrivener's error and LaCrosse begs the Court leave to amend his complaint to accurately reflect the original wording and the caption.[1]

LaCrosse was a computer forensics investigator for the Marion County Sherriff's Office ("MCSO") beginning in 2010. Sec. Am. Compl. ¶ 10, ECF No. 26. There was an Oregon State Bar

---

[1] The Court noted that LaCrosse has already filed three complaints and has had "sufficient attempts to properly cure deficiencies in his Complaint." Find. And Rec. p. 17, ECF No. 32. LaCrosse respectfully asks the Court to reconsider. The fluid and changing identity of the proper defendants has contributed to the multiple amendments. The request to allow Plaintiff to add "and individual" to paragraph 7 is minor and reasonable. It was more in the nature of a simple scrivener's error and not a deficiency of the pleading. The fact that the original complaint contains the full wording is evidence that Plaintiff intended to plead against whomever was the proper D.A. in their individual and official capacity.

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 2   2017-103

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

Complaint regarding the handling of digital forensic evidence filed against the MCDA in 2016. *Id.* at ¶ 11. A criminal investigation cleared LaCrosse of any wrongdoing and concluded that he had followed MCSO practices regarding the handling and storage of digital forensic evidence. *Id.* at ¶ 14. The MCDA initiated its own investigation of LaCrosse and concluded that, despite the finding in the criminal investigation, the MCDA would no longer call LaCrosse as a witness in future cases, a process known as *Brady* listing.[2] *Id.* at ¶¶ 16-7. Because of the *Brady* listing Plaintiff was effectively prevented from doing the job he had previously been doing. *Id.* at ¶ 17.

LaCrosse's suit alleges that the *Brady* listing was improper retaliation and that the listing was made without giving LaCrosse notice and opportunity to be heard thus depriving him of property and liberty interests as well as subjecting him in unequal treatment under the law. *Id.* at ¶¶ 22-34. The crux of LaCrosse's suit is that the Defendants were the legal and proximate cause of the harms complained of therein. *Id.* at ¶¶ 24-5, 33. LaCrosse objects to the narrow reading of paragraph 23, quoted by the Court. Find. And Rec. p. 4, ECF No. 32.[3]

While the Court ought to rely on the Second Amended Complaint as operative, Plaintiff begs in the interest of justice that the context from the other two complaints be considered when evaluating the pleadings.

/ / /

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] Plaintiff admits that this paragraph is not an exemplar of pleading drafting, Clarkson and MCDA did not directly "refuse to put Plaintiff back to full-time and full-duty work." Rather when read as a whole the complaint identifies Defendants as the legal and proximate cause of the harms. To the extent that editing would clarify this paragraph, LaCrosse begs for leave to amend to clarify the relationship between Defendants and the harms alleged. Like the request to amend paragraph 7 this request is narrow and does not seek to add new facts or claims, merely to clarify. As such the Court should freely grant leave to amend under FRCP 15(a). Further under FRCP 15(b) amendments are allowed to conform pleadings to the evidence. Here, clearly Defendants did not themselves refuse to put Plaintiff back to full-time and full-duty, rather the Defendants were the legal and proximate cause of the Plaintiff not being put back to full-time and full-duty.

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 3      2017-103

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

## II. DISCUSSION

**A. Plaintiff Has Pled Violations of the Fourteenth Amendment Due Process.**

Plaintiff alleges causes of action under the Fourteenth Amendment to the United States Constitution for violations of procedural due process, substantive due process and equal protection under the law. The Defendants have deprived the Plaintiff of both a property interest and a liberty interest by placing him on the *Brady* list without notice and opportunity to be heard and refusing to remove him from the list when mitigating evidence was presented to them.

**1. Plaintiff's Property Interest.**

The cases cited by the court stand for the proposition that a "property interest" in the terms and conditions of public employment is found where the employee has a reasonable expectation of entitlement "deriving from existing rules or understandings that stem from an independent source." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); *see also Board of Regents v. Roth*, 408 U.S. 564 (1972); *Ulrich v. City of San Francisco*, 308 F.3d 968 (9th Cir. 2002); *Stiesberg v. State of Cal.*, 80 F.3d 353 (9th Cir. 1996).

The courts have not generally found a right to a particular position to be a constitutionally protected property interest. *Stiesberg*, 80 F.3d at 357. However, that is not quite the argument that Plaintiff is advancing in this action. Unlike the lateral transfer in Stiesberg, here the Plaintiff is being effectively demoted based on the Defendant's unjustified and categorical refusal to consider him as a witness. The courts have found that "[a] demotion or … an alleged constructive demotion can implicate a protected property right for purposes of the Due Process Clause." *Maner v. Cty. of Stanislaus*, 725 Fed Appx 485, 488 (9th Cir 2018) (citing *Stiesberg v. California*, 80 F.3d 353, 357 (9th Cir. 1996)). That is precisely the situation here. Plaintiff enjoyed a property interest in being an

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 4        2017-103

investigative officer and participant on the SWAT team. Following Defendants' unjust *Brady* listing he has been constructively demoted. The fact that MCSO has kept Plaintiff as a *de facto* deputy in not legally equivalent to the *de jure* employment he enjoyed prior to his listing.

The remainder of the cases cited by the Court can be distinguished similarly to *Stiesberg*. In *Jackson v City of Los Angeles*, 46 F.3d 1142 (9th Cir. 1995) the plaintiff was "suspended for fifteen days for misusing his firearm and for leaving his post without authorization." Here Plaintiff was cleared of any wrongdoing and was nevertheless subjected to *Brady* listing by the Defendants. Additionally, the *Jackson* Court stated in *dicta* that a deprivation of the property interest in continued employment could be satisfied short of discharge. *Id.* ("[t]o establish constructive discharge, [plaintiff] must show that a reasonable person would be forced to quit" citing *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (holding that this determination is "normally a factual question left to the trier of fact"). Unlike *Jackson*, Plaintiff here contends that despite his following the practice of his employer he was subjected to treatment that made it constructively impossible to perform the job he had been doing for over fifteen years.

In *Barnes v. City of Phoenix*, 2009 WL 3424785 (D. Ariz. Oct. 22, 2009) the plaintiff complained that deprivation of a city vehicle and overtime pay were deprivations of property interest in employment. The court rightly dismissed. This case is substantively different. For an investigatory law enforcement officer, it is not an ancillary or peripheral benefit to be able to testify in criminal cases. Testimony is a core job requirement of a computer forensic investigator and the fact that Plaintiff was removed from that position *because of* the *Brady* listing is prima facie evidence of such. Plaintiff ought to have an opportunity to have a trier of fact determine if such amounts to constructive termination. Plaintiff is not arguing that he had a property interest in overtime pay, or a SWAT posting.

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 5     2017-103

Those are important factors that may come into play when a jury is evaluating damages, but the core issue of this suit is that Plaintiff has been denied the ability to be an investigative police officer after investing significant time into pursuing that career. The fact that the deprivation was caused by the Defendants' actions in violation of Plaintiff's due process protections makes it actionable under § 1983.

Plaintiff does indeed rely upon the sources identified by the Court, but the Court errs in finding that the *Brady* Best Practices Policy (the "Policy") defines Plaintiff's relationship with the MCSO. Best Practices for Navigating *Brady v. Maryland* in Oregon, published March 31, 2014. The Policy was established to guide and constrain the decision-making process of the DA's office and the District Attorney. The practice of *Brady* listing must necessarily comport with the existing constitutional protections afforded to Plaintiff including due process and this Policy is evidence that the Defendants had considered this fact. Paige Clarkson was involved in the creation of this Policy and ought to be well aware of the purposes of the policy.

Throughout the Policy the drafters used the form "should" indicative of a mandate or constraint on decision-making.[4] "Agencies should implement comprehensive and consistent Brady policies reflective of best practice." Best Practices, at 3. "Sound procedure should include review of relevant allegations to consider whether they are sustained."[5] *Id*. at 4. In the "DA Decision-Making Process" the Policy states that "comprehensive Brady procedure should include ways to identify … witnesses whose conduct may disqualify them as testifiers." *Id.* at 5. "Best Practices should include: …

---

[4] Merriam-Webster defines "shall" (present tense of "should") to mean (2)(a) "a command or exhortation"; (2)(b) "used in laws, regulations, or directives to express what is mandatory." The Policy is such a directive and the use of the mandatory verb "shall" or "should" is important evidence of the legal constraints the drafters recognized on the discretion to apply a *Brady* listing.

[5] It is important again to note that the allegations made against Plaintiff were not sustained. We don't know if the Defendants considered that in their decision-making process because no notice or opportunity to be heard were provided to Plaintiff.

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 6        2017-103

[g]athering of relevant information … not merely rumor or allegation." *Id*. The Policy by its own terms is designed to constrain the decision-making process of the DA in the identification of potential *Brady* witnesses, and prevent listing officers based on rumor.[6] The Plaintiff was denied notice and opportunity to be heard despite the Policy stating that notification methodology "requires: … create[ing] opportunity for affected witnesses to be heard." Ultimately, *Brady* articulates a fairness rule[7] and, while the original rule was designed to with the rights of criminal defendants in mind, this represents the danger that the rule will be applied unfairly towards law enforcement witnesses.

While the Marion County disciplinary policies and the collective bargaining agreement do not bind the Defendants directly, they are important sources that should be considered when evaluating whether the Plaintiff had a reasonable expectation in the particulars of his employment. Plaintiff did not expect to be subjected to discipline without just cause and he had a reasonable expectation of maintaining his role as a forensic investigator and detective, or at a minimum a patrol officer.[8] Put another way he had a property interest in not having a *Brady* listing and the defendants deprived him of that interest.

**2. Plaintiff's Liberty Interest.**

Plaintiff was subjected to a deprivation of a constitutionally protected liberty interest guaranteed by the Fourteenth Amendment. *Bollow v. Fed. Res. Bank of San Fran.*, 650 F.2d 1093, 1100 (9th Cir. 1981) (the "liberty interest protected by the due process clause of the fifth and fourteenth

---

[6] Instead the Defendants ignored the findings of the criminal investigators and subjected Plaintiff to *Brady* listing presumably because the MCDA had been exposed to an embarrassing OSB complaint.
[7] "[S]ociety wins not only when the guilty are convicted but when criminal trials are fair". *Brady*, 373 U.S. at 87.
[8] Plaintiff's *Brady* designation and the surrounding investigations have resulted in him being removed from his role as a detective and forensic investigator and returned to patrol duties. Then he was removed from Patrol and moved to judicial security. He was barred from returning to his former roles including SWAT due to the *Brady* listing. Within his department he has been prevented from applying to other positions. Ultimately Plaintiff was directed not ever to apply for another position and was barred from any contact with the public.

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 7        2017-103

amendments encompasses an individual's freedom to work and earn a living"). While termination recognized as an important indicium of an unconstitutional deprivation of liberty it is not a strict requirement. *Guzman v. Shewry*, 552 F.3d 941, 955 (9th Cir. 2009) ("made in connection with the termination of employment *or the alteration of some right or status*" (emphasis added)); *Erickson v. U.S. ex rel. Dept. of Health and Human Services*, 67 F.3d 858, 862 (9th Cir. 1995); *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982).

     Here, it is clear that the Plaintiff did suffer the sort of reputational harm that was identified by the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972) ("a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."). The Court here identified the severe employment consequences that a *Brady* listing has for a law enforcement officer.[9] The Court has also conflated the prongs of the three-part test in *Vanelli* by finding the fact that Plaintiff was not terminated by MCSO demonstrated that the *Brady* list was not sufficiently stigmatizing. Court. Find. And Rec. p. 13, ECF No. 32. Rather the proper analysis is to first determine if the labelling of a police officer as untruthful is stigmatizing under *Roth* and only then look to the termination *or the alteration of some right or status* under *Vanelli*. Here Plaintiff has made a prima facie showing that *Brady* listing is sufficiently stigmatizing.

     In support of this Objection Plaintiff offers his declaration, filed herewith. Plaintiff was in the hiring process at two other agencies and was forced to withdraw his applications. Failing in the hiring process becomes something that other prospective employers look at and Plaintiff wanted to avoid having those failed applications in his file. Furthermore, Plaintiff has declared that his review of agencies with available open positions decline to consider applicants with a *Brady* designation.

---

[9] *See* Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan. L. Rev. 743 (April 2015).

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 8    2017-103

Additionally, Plaintiff has been prevented from applying, within the MCSO, to positions he is qualified for *because of* his *Brady* listing. Finally, Plaintiff has demonstrated that his rights and status as a forensic investigator, competent to testify, were altered by the Defendant's actions.

### B. Plaintiff's Right to Equal Protection Was Violated.

As a separate and distinct claim, the Plaintiff has alleged that his rights to equal protection under the law were violated because the Defendants listed and maintained Plaintiff on the *Brady* list despite his actions in conformance with other similarly situated officers. Namely, the Defendants have not *Brady* listed other MCSO officers for the same or similar conduct. The state action here bears no "rational relation to a legitimate state interest." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). While deferring to the state actor the courts ought not to condone conduct that is "malicious, irrational, or plainly arbitrary." *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990).

Here the actions of the DA and MCDA were both irrational and plainly arbitrary. The actions were irrational because they were taken in direct contravention of the adopted best practices Policy as discussed above.[10] The actions were also plainly arbitrary because they were taken despite there being no finding of untruthfulness on the part of the Plaintiff. The Supreme Court has held that the State may not rely on action whose "relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 446 (1985). Here there is undoubtedly an important State interest in conducting fair and impartial

---

[10] The Defendants failed to:
- "Ensure that Law Enforcement is provided an opportunity to be heard";
- "Gather [] relevant information" and instead acted on "mere[] allegation or rumor";
- Use "[t]iered level of Brady designations";
- "seek inout from command staff *prior* to any formal Brady decision";
- "consider status of Internal Affairs investigation";
- "Create opportunity for affected witnesses to be heard";
- Find a "direct nexus to employment".

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 9    2017-103

trials and in not being a party to perjured testimony by untruthful witnesses. However, the application of *Brady* listing to an officer who was cleared of wrongdoing and where no allegation of untruthfulness was found can have no relationship to that asserted goal. Despite the clearly established law preventing arbitrary or irrational application of the law, the Defendants have violated Plaintiff's rights to equal protection under the Fourteenth Amendment. Furthermore, Plaintiff has alleged that the Defendants initiated *Brady* listing in retaliation for his part in exposing the MCDA to an embarrassing OSB complaint and subsequent criminal investigation. The bare fact that the MCDA conducted an "investigation" does not in itself create conditions necessary to find the Defendants acted without malice, acted rationally, or that they were not arbitrary.

### III.  CONCLUSION

This Court must take the facts, as pled, as true and apply them to the law in a light most favorable to the Plaintiff. The Plaintiff has properly alleged a property interest in the terms and conditions of his employment which included a negative *Brady* listing. Further, Plaintiff has properly alleged a liberty interest because the Defendants deprived him of his freedom to work and earn a living as a forensic investigator. Finally, the Plaintiff has alleged a violation of his equal protection rights because the Defendants' *Brady* listing was irrational and arbitrary and there exists evidence of a malicious motive.

Plaintiff has filed three Complaints and understands the Court's hesitancy to allow further amendment. However, Plaintiff seeks leave to amend paragraph seven of his Second Amended Complaint to reinsert the mistakenly omitted language alleging Paige Clarkson acted in her individual capacity which is contained in the caption as well as the original complaint. Plaintiff seeks further leave to clarify and make more definite paragraph 23 of his Second Amended Complaint to

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 10     2017-103

make clear that Defendants were the proximate cause of the harms complained of therein. Neither of these requested amendments substantially alter the facts as pled nor do they seek to add new causes of action or claims for relief and both should be granted in the interests of justice.

Plaintiff, by filing this objection, does not waive his right to *de novo* consideration of the factual issues or to appellate review of these findings and any order that is entered based upon theme.

Dated this 5th day of April 2019.                    THENELL LAW GROUP, P.C.

                                       By:   */s/ Daniel E. Thenell*
                                             Daniel E. Thenell, OSB No. 971655
                                             E-mail: dan@thenelllawgroup.com
                                             Emerson Lenon, OSB No. 123728
                                             E-mail: emerson@thenelllawgroup.com
                                             Telephone: (503) 372-6450
                                             *Of Attorneys for Plaintiff*

PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMENDATIONS - Page 11          2017-103